**In re Warren MANGUM, Debtor.**

**In re B AND S & T ENTERPRISES, INC., Debtor.**

**In re HAMPTON FORGE LTD., Debtor.**

**In re David MERRITT, Debtor.**

**Bankruptcy Nos. 92–23220–B, 90–26257–B, 92–24355–B and 92–41664–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Nov. 10, 1992.

H.B. Price, III, Trustee, Virginia Beach, Va.

Steven L. Brown, Tolerton & Brown, Norfolk, Va., for Trustee.

W. Greer McCreedy, Norfolk, Va., for B and S & T Enterprises, Inc.

Douglas Fredericks, Norfolk, Va., for Warren Mangum.

Debera F. Conlon, Asst. U.S. Trustee, Norfolk, Va.

## ORDER REGARDING PROFESSIONAL PERSONS

HAL J. BONNEY, Jr., Bankruptcy Judge.

In re WARREN MANGUM, Debtor.

### Case No. 92–23220–B

This Chapter 7 case was filed on May 29, 1992. H.B. Price, III, was appointed Interim Trustee by the U.S. Trustee no later than June 4, 1992, when notice went to creditors. The § 341 meeting of creditors was held July 7, 1992, on which date the trustee filed a report of no assets to distribute.

On August 5, 1992, an objection to the debtor's claim of exempt property was filed with the Court by Steven L. Brown, Esquire, representing himself as attorney for the trustee.

On August 25, 1992, the Clerk returned to Brown a proposed order appointing him attorney for the trustee advising that no application to employ had been filed. This application came in on August 31, 1992. The Court entered the order of appointment on September 1, 1992.

On September 3, 1992, Brown filed on behalf of the trustee a motion to extend the time to object to the debtor's discharge.

On September 24, 1992, the Court conducted a hearing on the motion to extend and on the objection to the claimed exemptions. At that hearing it came to light that Brown had been serving as the trustee's attorney since July 1992. In fact, failure to be appointed became an issue in the hearing on the objection to exemptions.

By an Order to Show Cause entered on October 2, 1992, the Court directed H.B. Price, III, to show cause why he should not be removed as trustee in this case and/or sanctions imposed and why Steven L. Brown should not be removed as attorney for the trustee and/or sanctions imposed for their proceeding so long without Court approval of the employment of an attorney, the trustee utilizing an attorney without proper authority and the attorney holding himself out as appointed when this was not so.

A hearing on the show cause was conducted on October 20, 1992. For this purpose Brown employed Jerrold G. Weinberg, Esquire, to represent him.

The evidence shows that Price contacted Brown about being his attorney on July 23, 1992, and Brown sent Price a proposed order for endorsement on July 28, 1992. On August 10, 1992, Brown passed the proposed order to the U.S. Trustee at Norfolk. Debera F. Conlon, Assistant U.S. Trustee, represented her office moved these papers on in two to three days. The proposed order finally came to the Court on August 21, 1992 but, as noted above, had to be returned, Brown had filed no application to employ.

During this time, both on the telephone and by letter dated July 28, 1992 and August 17, 1992, Brown represented to Douglas C. Fredericks, Esquire, attorney for the debtor, that he was attorney for the trustee.

At the show cause hearing the trustee was forthright to state he should have been more diligent and he should have supervised Brown.

Brown said it was his "policy" to take care of these matters as soon as possible. Too, he argued, and correctly so, that due to time restraints a trustee's attorney must often quickly get to work. That cannot be a justification.

However, both Brown and the trustee acknowledge there was delay here which could have been avoided if full diligence had been given the matter. And that is the problem.

(1) The appointment of counsel for the trustee, where required, is basic and should be immediately tended to. It is a matter of cranking out form material, perhaps on a computer, getting it signed and very promptly to the Court. The lack of diligence is (a) the total time required here to get the material to the Court and (b) such fall-out as sending a proposed order without the basic motion or application upon which the order is based.

(2) There is something unwholesome about telephone calls, letters, action under the guise of authority.

The danger, dear friends, is that such a *modus operandi* can become habitual and the quality of the system is lessened.

H.B. Price, III, is hereby removed as trustee in this case. This action does not bar him from serving in other cases.

Steven L. Brown is hereby removed as attorney for the trustee. This action does not bar him from serving in other cases.

The Court agrees that the action of concern here is not contemptuous. No sanctions are imposed.

The Court will cite the law below for all of these cases.

## In re B and S & T ENTERPRISES, INC., Debtor.

### Case No. 90–26257–B

This case was filed under Chapter 7 of the Bankruptcy Code on December 26, 1990. H.B. Price, III, was appointed interim trustee on January 14, 1991 and by operation of law became trustee. A § 341 creditors meeting was held on February 14, 1991.

Then, in 1992, a strange set of events occurred. Price orally employed another attorney, not a party here, who on his own, *without knowledge of Trustee Price,* found he could not pursue the representation and "in the latter part of August" 1992 contacted Steven L. Brown, Esquire, and delivered all of the papers to Brown. Mind you, Price knew nothing of this until Brown contacted him on August 25, 1992.

Brown represents that he prepared legal papers on September 3, 1992, sent them to Price, received them back on the 10th, got them to the office of the U.S. Trustee on the 10th, got them back on the 17th and to the Court on the 18th.

Yet again representing himself to be trustee's counsel when he was not so appointed, Brown filed a motion on September 4, 1992 to sell certain property. Not until September 18, 1992 was an application to employ himself as counsel for the trustee filed. The Court entered the order of appointment on September 21, 1992. On September 28, 1992, Brown filed an application to employ an auctioneer to sell said property. The sale was scheduled for September 30, 1992.

We have another case of delay and mismanagement. [The Court has considered each case separately on its own merits. However, a pattern existing in several cases cannot be ignored.] But this case holds another untenable fact.

On the morning of the sale, the Court received a telephone call from Calvin Zedd, auctioneer, who reported the sale had been advertised, set-up and several hundred persons had appeared for the event scheduled for 10:30 A.M. Zedd said he had no order authorizing the sale. When staff could not resolve the matter, the undersigned spoke to Zedd, concluded the sale should proceed and that the Court would prepare and enter an order prior to 10:30 A.M. This was done and the emergency order signed at 9:50 A.M.

In investigating the matter in-house, it was determined Brown's proposed order of sale came to the Clerk's Office the day before, September 29, 1992, and flowed across the Judge's desk on the 30th. Due to the scenario of this case and realizing a sale had been advertised and prepared without an order, the undersigned would not enter Brown's proposed order.

The Court subsequently entered an order on October 2, 1992, directing Price and

Brown to show cause why they should not be removed as officers of the court in the case and/or sanctions imposed.

The Court has addressed the tardy appointment papers above. As to the tardy seeking of authority to employ an auctioneer and sell the property, Brown represented at the hearing that Zedd had insisted on September 30, 1992, as the date for sale and that he (Zedd) did not return the pertinent papers until September 21 or 22, 1992. *Again, the papers were flawed,* as in the *Mangum* case, when the Clerk had to return them to Brown as they were unsigned.

What do we have?

(1) A flawed, delayed approval of appointment of counsel.

(2) Employment of the auctioneer without an order of the Court.

(3) The last minute arrival of a proposed order authorizing the sale.

(1) Brown was not employed by Price. He came into the case "sideways" by taking it from another attorney. While Price could have declined, Brown was in a large sense forced upon him. Trustees employ *and* contact prospective counsel. Brown was required to tell the other attorney to go back through Price. Brown contacted Price, not Price Brown.

The entire employment process is tainted here. If the Court were to close its eyes to it or consider it harmless, a very bad example of professionalism would be encouraged.

(2) The proposed order to employ Zedd as auctioneer did not come to the Court until September 29, 1992. *Yet* he, on Brown's oral authority, had (a) planned the sale, (b) advertised it several times in the newspaper and (c) set-up the sale. While such a professional person may be contacted relative to employment, he does not move a brush until there is an order authorizing it.

(3) Brown's tardiness in getting a proposed order to the Court just hours prior to a scheduled sale is inexcusable. What if no judge had been available? No personal delivery of it was made to the Judge with explanation of its lateness.

Brown argues he was "under the gun" from Zedd who had insisted on a September 30, 1992 sale. If this was so, and Zedd was neither a party nor a witness, who is controlling the bankruptcy process? To be placed over this barrel does not speak well of the quality of service being rendered by those in charge.

The Court believes Price as trustee was the "victim" of attorneys. While he must assert his position as trustee and let it be known the attorney works for him, the Court declines to remove him.

Steven L. Brown is hereby removed as attorney for the trustee in this case. This action does not bar him from serving in other cases.

The Court agrees that the action of concern here is not fully professional and is of a poor quality, but is not contemptuous. No sanctions are imposed.

Case law will be discussed below.

In re HAMPTON FORGE LTD., Debtor.

Case No. 92–24355–B

This is an important Chapter 11 case. They all are. It was filed on July 29, 1992.

Not until September 28, 1992 was an application to employ Steven L. Brown, Esquire, as counsel for the debtor, filed. The Court directed that the application be set for a hearing and it was heard on October 20, 1992.

The Court was curious to learn why it had taken two months to submit a basic pleading and a proposed order which, if entered, would give approval and authority to act.

At the hearing Brown argued that his client was much out of the country. Much, but not all of the time. And why wasn't the application signed by the principal on July 28, 1992, when he signed the bankruptcy petition?

Again, delay. Excuses. The "I'll get to it when I get to it" attitude.

Since no complications arose as in *Mangum* and *B and S & T* above, without setting any *stare decisis,* the Court approves the application for employment of

Brown as attorney with a stern admonition and the future provision set forth below.[1] Too, no contempt, no sanctions.

In re DAVID MERRITT, Debtor.

Case No. 92–41664–B

This case was filed August 13, 1992, and the application to employ Steven L. Brown, Esquire, as attorney for the debtor came in on October 2.

Admittedly, this is a large, complex and important case. Indeed, it has drawn considerable public attention.

Brown offers two reasons for the tardiness here.

(1) He sent the application to the debtor for his signature "early in September." The client did not promptly return it. Brown called Merritt as a witness at the hearing on the application to employ conducted October 30, 1992, and Merritt said it sat on his desk and he had no excuse.

(2) Although he had represented Merritt since September 1991, Brown said he had to quickly file the case. Too, he says he delayed submitting the application since when other creditors were determined, he "might have a conflict."

The Court finds:

(1) Applications to employ and proposed orders thereof are computer or word processor produced. They can be given the client at the time he signs the bankruptcy petition.

(2) An attorney is ethically bound, of course, to avoid conflicts *and* to make diligent inquiry relative thereto. Brown had been serving his client since September 1991. Should a conflict later develop which cannot be ascertained by diligent inquiry, that can then be called to the attention of the court. *One is not attorney for the debtor until court approved and that cannot be delayed unless the court consents.*

It must be noted that counsel for a group of lienholders appeared at the hearing on the application to employ and opposed Brown's employment. The Court is of the opinion that the concerns raised by them go to the merits of the case and not to the issue of employment.

Since no complications arose as in *Mangum* and *B and S & T* above, without setting a *stare decisis,* the Court approves the application for employment of Brown as attorney with a stern admonition and the future provision set forth below. Too, no contempt, no sanctions.

*Conclusions and Further*

 11 U.S.C. 327 governs the employment of professional persons.

(a) Except as otherwise provided in this section, the trustee with the court's approval, may employ one or more attorneys

. . . .

It is a matter of discretion and clearly the court must be satisfied any employment is in the best interest of the case. As a court may approve or disapprove an appointment, conversely it may remove for cause.

11 U.S.C. 105, *Power of Court,* provides, in part

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

"Appropriate to carry out the provisions" of the Bankruptcy Code clearly includes, among other things, keeping the system wholesome and expeditious. The Supreme Court on numerous occasions has mandated "prompt and effectual administration" of bankruptcy cases. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), citing Mr. Justice Story in *Ex Parte Christy,* 44 U.S. (3 How.) 292, 312, 11 L.Ed. 603 (1844); *U.S. Fidelity and Guaranty Co. v. Bray,* 225 U.S. 205, 218, 32 S.Ct. 620, 625, 56 L.Ed. 1055 (1912), using the term "expedite;" *Wiswall v. Campbell,* 93 U.S.

---

**1.** The Court observes that when Crestar Bank filed a request for a temporary restraining order in this case on August 28, 1992, and requested and received a hearing that afternoon, counsel for Crestar represented he had been unable to reach Brown at the place and number provided. The Court granted the emergency relief and Brown and the Bank later resolved the matter.

347, 350, 23 L.Ed. 923 (1876), using the term "speedy."

11 U.S.C. 324 provides for the removal of a trustee for cause.

One circuit has spoken relative to removal of professional persons holding it can be done under 11 U.S.C. 327 and "must be considered in light of the particular facts of each case." *In re BH & P Inc.*, 949 F.2d 1300 (3rd Cir.1991).

The Court did not search for these instant cases, they fell out before it. *Mangum* came to the Court's attention when a hearing resulted on two motions. *B and S & T* came to light when the undersigned received a telephone call from an auctioneer minutes from a sale without an order. The proposed order of employment in *Hampton Forge* came across the undersigned's desk subsequent to the above and recalling Brown's representation in the first case that such an omission was rare, he set this for a hearing. Likewise, a proposed order later appeared in *Merritt* and startled that as large a case as that had proceeded seven weeks without formal employment, this was set for a hearing.

The events of these four cases speak for themselves. *It is not a single instance.* It is no way to run a railroad ... or the bankruptcy process, because it is totally unnecessary. The application to employ and the proposed order thereto can be cranked out at the time the bankruptcy petition is prepared ... and signed at the same time as the petition.

Consider, too, the actual and potential problems, when matters are not attended to. They come into litigation and are seized upon by opposing counsel. *Mangum.* There is confusion in the bankruptcy marketplace. *B and S & T.* Consider the public perception. Brown is acting as attorney, without approval, in a case of considerable public interest. *Merritt.*

Most threatening of all, it becomes habitual and lies there as a continuing potential threat to the integrity of the system.

H.B. Price, III, is an able businessman and makes a good trustee. He readily admits he should have been more diligent; no excuses.

■ Steven L. Brown, Esquire, on the other hand sees little fault on his part. He has a reason, an excuse for every omission. Initially, he represented to the Court that what occurred in *Mangum* was rare. Apparently it is not. He is a hard-working attorney, aggressive and dedicated. He has a wide bankruptcy practice. The Court does not feel that one so involved as the facts of these cases point out and one who tends to explain it away rather than accept what has been done will learn a great deal from this. And the Court says this out of concern, helpfully, not punitively. Doesn't Brown perceive the dangers he exposes himself to? Ultimately, he would be the loser.

Therefore, in addition to removing him as counsel in *Mangum* and *B and S & T*, from this date hence, in all cases, Steven L. Brown shall file an application to employ and the proposed order at the same time as the bankruptcy petition. This discipline he needs.

The Court needs to say a word about the Office of U.S. Trustee in all of this. Clearly, that office needs to monitor cases better. It was a failure to timely employ an auctioneer and obtain an order approving a sale that involved the U.S. Trustee in *Kitchen Equipment Company of Virginia, Inc.*, 90–22185–B. In *B and S & T* we have a similar situation. Further, it was necessary for the Court to ask the U.S. Trustee to more closely monitor orders conditioning Chapter 11 debtors in possession. A significant time lag existed in certain instances. Now we have a problem with late employment of attorneys. In addition to whatever steps need to be taken internally, the U.S. Trustee shall henceforth note on applications to employ and on proposed orders thereto when received in that office and when passed on.

Finally, we would rather have avoided all of this. It is unpleasant. However, for the sake of the public interest and an efficient bankruptcy system, the Court will not tolerate what has happened in these cases. Pass the word along.

█ All the Court has been trying to say is better expressed by another court: "Accordingly, the obligations of a debtor, and professionals employed by the debtor, *especially debtor's attorney*, are necessarily fiduciary. Unless those fiduciary duties are fulfilled, *the bankruptcy process appears to creditors and the public to be tainted by self-interest, abuse of the bankruptcy process,* or even fraud."

*In re Sky Valley, Inc.*, 135 B.R. 925, 933 (Bkrtcy.N.D.Ga.1992).

But *Sky Valley* goes on to say:

"As a consequence, it is ultimately the duty of the bankruptcy court, with the assistance of the U.S. Trustee, to monitor the conduct of the debtor and the professionals he employs to assure fidelity not only to the express requirements of the Bankruptcy Code *but also the policies which underlie such requirements.*"

P. 933

Emphasis added.

All of you, for your own benefit, should memorize this.

ALL OF THIS IS SO ORDERED.