Judgment of the Court of Claims affirmed, without costs.

In the Matter of the Claims of LOUIS CHRISTO et al., Respondents, against NEW YORK CENTRAL RAILROAD COMPANY, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Award affirmed, with costs to the Workmen's Compensation Board, upon the opinion of Mr. Justice Deyo in *Matter of Baird* v. *New York Central R. R. Co.* (*ante*, p. 577, decided herewith).

Foster, J. (dissenting). The New York Central Railroad Company, employer and self-insurer, appeals from awards of compensation made by the Workmen's Compensation Board of this State to four injured employees. The sole issue on appeal in each case is that of jurisdiction. The employer contends that the compensation board was without jurisdiction to make the awards on the ground that a part of the duties of each claimant was in the furtherance of interstate commerce, or in work so closely related thereto as to bring him within the purview of the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51 *et seq.*). Early in the history of compensation law it was held that an interstate carrier was not liable for State compensation to an injured worker employed in interstate commerce even though no negligence was involved and the injury arose out of the ordinary risks of the employment (*New York Central R. R. Co.* v. *Winfield*, 244 U. S. 147). I do not find that this ruling has ever been changed, but there have been many and diverse decisions as to what constituted employment in interstate commerce.

In the present cases claimants were employed as shopworkers in the shops of the railroad company at West Albany, New York. It is conceded that each claimant was injured as the result of an accident arising out of and in the course of his employment. The claimant Christo was a boilermaker's helper; Connor was a sheet metal worker; and Roman was a tender frame man who worked at repairing locomotive tenders. The duties of these men required them at times to do repair work on steam locomotives which had been withdrawn from active service, and as a matter of fact all three were injured in such line of work. The claimant Lester was an electrician, and he was injured while working on a switch box in the blacksmith's shop. His duties generally required him to service electrical equipment, which in turn was used in the repair of locomotives.

The employer is a common carrier by rail, operating both in interstate and foreign commerce, with lines extending into eleven States of the United States and two provinces of Canada. Its shops at West Albany, New York, handle repairs for most of its locomotives which operate in interstate traffic east of Buffalo. After repairs are made each locomotive is turned over to the master mechanic of the road who reassigns them to service. These facts are undisputed. I think also that any fair consideration of the evidence must lead to the conclusion that claimants' duties required them to work upon locomotives and other rolling stock withdrawn temporarily from interstate service for repairs, or upon machines that are in turn used to repair such equipment.

The compensation board has found that the locomotives upon which three of the claimants were working at the time of injury had been withdrawn from service for at least fifteen days, and were disabled and without assignment. The evidence sustains these findings. The board also found and concluded in each case that no part of the duties of claimant was in the furtherance of interstate commerce, or in work so closely related thereto as to substantially affect such commerce.

Prior to the amendment in 1939 of the Federal Employers' Liability Act the test of whether an employee was employed in interstate commerce was pinpointed to the service he was rendering at the time of injury (*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556). The opinion in that case stated (p. 558): "The question for decision is, was Shanks at the

time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered " at the time of the injury.

On August 11, 1939, the following amendment to the act became effective (U. S. Code, tit. 45, § 51): "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter ".

This amendment wiped out the pin-point test required under the *Shanks* case (*supra*). Thereafter the inquiry had to be whether any part of the employee's duties was in the furtherance of interstate commerce, or so closely associated therewith as to substantially affect the same, irrespective of what he was doing at the time of injury. Thus, where it was conceded that an employee of a railroad was engaged in work of an interstate nature one day in a week and the rest of the week in work of an intrastate nature, it was held that he came under the Federal act although he was injured during the period he was engaged in intrastate work (*Matter of Wright* v. *New York Central R. R. Co.*, 263 App. Div. 461, affd. 288 N. Y. 719, certiorari denied 317 U. S. 668).

But with the pin-point test gone there still remains the query in each case whether any part of the employee's duties is in furtherance of interstate commerce, or so closely related thereto as to substantially affect the same. Before 1939 a rule was evolved, which, for the lack of a better name, may be called the " dead engine rule ". It was reasoned that where an engine was withdrawn from interstate service for repairs the question of whether it retained its interstate character, and imparted it to those who worked upon it, depended upon its condition and the time taken for repairs (*Industrial Acc. Comm. of Cal.* v. *Davis*, 259 U. S. 182). Thus a roundhouse employee who worked upon a locomotive withdrawn from interstate service for twelve days was not employed in interstate commerce (*New York, New Haven & Hartford R. R. Co.* v. *Bezue*, 284 U. S. 415). There are other cases, decided in the same period, which applied this rule (*Matter of Zmuda* v. *Delaware, Lackawanna & Western R. R. Co.*, 268 N. Y. 659, certiorari denied 297 U. S. 707; *Matter of Leslie* v. *Long Island R. R. Co.*, 248 N. Y. 511). The same concept was adhered to as late as 1943 in the case of *Matter of McGowan* v. *New York Central R. R. Co.* (265 App. Div. 272, affd. 290 N. Y. 889), but that case dealt with an injury suffered in 1930. With the pin-point test no longer applicable the question remains whether the 1939 amendment also abrogated the so-called " dead engine rule ", and extended the ambit of interstate employment for the purposes of the act.

The language of the Federal act before amendment, and under which the " dead engine rule " was evolved, was limited thuswise (35 U. S. Stat. 65): " every common carrier * * * while engaging in commerce between any of the several States * * *, shall be liable in damage to any person suffering injury while he is employed by such carrier in such commerce * * *." The rule was therefore devised, and only useful, for the purpose of determining whether an employee was actually employed in interstate commerce or in work so closely related thereto as to be practically a part of it. Commerce was finally interpreted to mean transportation (*Chicago & North Western Ry. Co.* v. *Bolle*, 284 U. S. 74). Congress must have been cognizant of this judicial construction placed on the language of the original act, but in adding the 1939

amendment it used language much more embracive, while at the same time retaining the language of the original act. Those actually employed by an interstate carrier in interstate transportation were clearly covered by the original act, and to those were added by the amendment all employees, any part of whose duties shall be in the furtherance of interstate commerce, or work substantially affecting the same. Quite conceivably an employee, not actually employed in interstate transportation, may perform duties that will further interstate commerce or substantially affect it. If the intent of Congress was merely to void the pin-point test such all-inclusive language was not necessary. The desired result could have been obtained by simply providing that an employee of an interstate carrier would be covered if any part of his employment was in interstate commerce. This would have left intact judicial interpretations as to what constituted employment in interstate commerce. However, in view of the broad and far-reaching language used in the amendment I find it impossible to escape the conclusion that the intent was to sweep away all refined judicial distinctions theretofore used to determine what constituted such employment, including the so-called " dead engine rule ". The apparent intent was to include any employee who performs services in connection with any instrumentality essential to interstate commerce (*Edwards* v. *Baltimore & Ohio R. R. Co.*, 131 F. 2d 366; *Bretsky* v. *Lehigh Valley R. R. Co.*, 156 F. 2d 594; *Shelton* v. *Thomson*, 148 F. 2d 1; *Ermin* v. *Pennsylvania R. R. Co.*, 36 F. Supp. 936; *Matter of Assman* v. *Long Island R. R. Co.*, 269 App. Div. 871). This would include all shop employees, any part of whose duties has to do, directly or indirectly, with the servicing of locomotives used in interstate transportation, regardless of immobility or the time taken for repairs.

These views impel me to the conclusion that the decision of the Workmen's Compensation Board in each case wherein it was held that no part of claimant's employment was in the furtherance of interstate commerce was erroneous as a matter of law. The awards in each case should be reversed and the claim dismissed, without costs.

Hill, P. J., Heffernan, Brewster and Deyo, JJ., concur in decision; Foster, J., dissents, in an opinion.

Award affirmed, with costs to the Workmen's Compensation Board, upon the opinion of Mr. Justice DEYO in *Matter of Baird* v. *New York Central R. R. Co.* (*ante*, p. 577, decided herewith).