**DURYEE v. ERIE R. CO. et al.**

No. 26813.

United States District Court
N. D. Ohio, E. D.

June 30, 1950.

Eugene B. Schwartz, Cleveland, Ohio, Richard Swan Buell, New York City, for plaintiff.

M. C. Smith, Jr., John A. Hadden, and John S. Beard, Jr., all of Cleveland, Ohio, for defendants.

FREED, District Judge.

On January 18, 1938 the Erie Railroad Company filed in this Court its petition for reorganization under Section 77 of the Bankruptcy Act, Title 11 U.S.C.A. § 205, and on December 20, 1941 the reorganization court issued a final decree pursuant to Section 77, sub. f, of that Act, vesting the estate of the debtor in the Erie Railroad Company as reorganized and discharging the debtor from its debts and liabilities. A subsidiary of Erie, the New Jersey and New York Railroad Company, had filed its petition for reorganization in connection with the Erie proceedings in June, 1938, and the individuals who served as trustees for Erie were appointed to serve in that capacity for New Jersey. No plan of reorganization for New Jersey was proposed, and in September, 1941 the New Jersey trustees petitioned for an order dismissing the proceedings for reorganization of New Jersey in this Court. In accordance with an order entered in the Erie proceedings in December, 1941, the property of New Jersey vested in Peter Duryee, a trustee appointed by the District Court for the District of New Jersey in proceedings for a reorganization of New Jersey in that court.

Some five years after the entry of the so-called "bar order" and the transfer of the New Jersey reorganization, there were instituted in this Court three actions attacking the efficacy of this bar order to foreclose alleged claims of New Jersey arising out of the relationship existing between the two corporations prior to the Erie reorganization.

On September 28, 1946 one Beckley, representing certain bondholders of the New Jersey, brought an action seeking to have the funded debt of New Jersey declared to be an obligation of Erie on an implied

or constructive trust resulting from the willful mismanagement of New Jersey by Erie. In that petition it was charged that Erie had engaged in a "plan and scheme" to treat New Jersey as a mere adjunct of Erie and had "wilfully and deliberately engaged in a course of conduct which was intended ultimately to deprive New Jersey * * * of all profits and earnings * * *"; that it was further a part of the scheme to manage New Jersey so as to create "large and unjustifiable liabilities" of New Jersey to Erie; that Erie exploited New Jersey by overcharging for services furnished by Erie to New Jersey and by underpaying New Jersey for supplies and services furnished by New Jersey to Erie; and that excessive and improper charges were made by Erie to New Jersey for salaries and wages of employees of Erie and for purchases of coal by New Jersey from Erie.

On April 2, 1947 Peter Duryee commenced an action in this Court for the purpose of having certain debts and obligations of New Jersey in excess of one million dollars declared to be the debts of the parent Erie because of the complete domination and control exercised by Erie over New Jersey so as to render New Jersey a mere department, adjunct, and instrumentality of Erie.

On December 9, 1947 Charles W. Massie, on behalf of certain bondholders of New Jersey, petitioned the reorganization court for a modification of the bar order or a reopening of the reorganization proceedings to permit the claims of New Jersey to be asserted against Erie. He alleged fraud in the management of New Jersey by Erie prior to the latter's reorganization and fraud in the manner in which New Jersey was brought into and kept in the Erie reorganization proceedings, to wit: "Erie and its officers and directors, by the device of dismissing New Jersey and New York from these proceedings, fraudulently concealed from this Honorable Court, at the time of the entry of the said order #386, that under the parent and subsidiary rule, which it knew to be applicable to itself, it was liable

to satisfy the debts and obligations due to the creditors of its instrumentality the New Jersey and New York Railroad Co. and further that by its manipulation of the affairs of the New Jersey and New York, through its control of more than 40 years, it had diverted to its own use and purposes all of the profits, assets, and property of value of New Jersey and New York * * *."

Duryee was fully cognizant of the actions brought by Beckley and Massie and the charges made in those actions, including the fraud and mismanagement charged.

The three actions were heard by Judge Wilkin of this Court. While both the Duryee and Beckley actions were cast in the form of plenary suits to which the bar order was pleaded as an affirmative defense, both actions were in essence, like the Massie petition, attempts to vacate or modify the bar order insofar as it foreclosed claims of New Jersey. The fact that the plenary suits were brought in the same Court that issued the bar order made the form in which the actions were brought comparatively unimportant, and the trial Court treated the actions, alternatively, as seeking to state a basis for reopening the Erie plan of reorganization.

The Court disposed of these three matters in a single opinion. 76 F.Supp. 635. Summary judgment for Erie was granted in the Duryee and Beckley actions and the Massie petition was denied. The Court held that such claims could not be asserted generally against reorganized Erie and provided no basis for a reopening of the Erie plan of reorganization. The Beckley and Duryee decisions were affirmed by the Court of Appeals for this circuit in opinions reported at 175 F.2d 58 and 175 F.2d 64. Certiorari was denied by the Supreme Court in the Duryee action on October 24, 1949, 338 U.S. 861, 70 S.Ct. 103. The denial of the Massie petition alleging fraud was not appealed.

The present action, brought by Peter Duryee after the ruling of the Court of Appeals, represents a fourth attempt in this Court to attack the finality of the Erie reorganization. Erie promptly moved for

a summary judgment relying upon previous proceedings in this matter of which the Court has judicial notice.

■ The charges made against Erie in the present complaint, and the assertions of plaintiff's counsel in support of his motion for a continuance to permit discovery, add nothing of substance to what has already been before this Court in the sum total of the three previous actions and what has already been duly considered by this Court. They merely reiterate in different verbiage and with elaboration the identical matters set forth in the three prior assaults on the bar order.

The Court is now confronted with a fourth attack on the bar order containing charges of fraud which were known to the plaintiff or should have been known to him at the time of his prior action and which were urged upon the Court in contemporaneous actions by bondholders. It is true that these bondholder actions were not prosecuted in the name of the trustee, but he is chargeable with notice of them and, in this Court's opinion, bound by the decisions there reached. They were not actions brought by officious intermeddlers, but actions brought after consultation with the trustee and carried on simultaneously with his own litigation in the same court and with his full knowledge. Surely, had those actions been successful in setting aside or modifying the bar order in favor of New Jersey, the trustee would have been able to take advantage of this success on behalf of all the other claims of New Jersey against Erie. It would be an anomaly to hold that he is not bound by an adverse decision even though he did not formally intervene in those actions. Otherwise, a trustee who represents all claims on behalf of the debtor could conduct a piecemeal assault on the finality of a reorganization decree through the expedient of acquiescing in suits brought by creditors of the debtor asserting claims that belong to the debtor.

It may be, although this Court does not so decide, that in an extreme and flagrant case, there remains in the reorganization court a power to reopen the proceedings to permit the assertion of claims based on fraud which were not known or in the exercise of reasonable diligence could not have been known to the claimants before the entry of the final decree.

The present case does not call for resolution of that question, for here the reorganization court is again asked to modify or vacate its final decree by the trustee of New Jersey who once had the opportunity to present those matters upon which he now relies, matters which were once brought to the attention of the Court in closely connected litigations of which that trustee was well aware and which to all intents and purposes had the same effect as if they had been brought by him.

If the plaintiff were again permitted to renew his attack on the bar order under the circumstances existing here, final decrees and the courts which render them would know no rest, and the policy of the Reorganization Act to launch the reorganized corporation upon a new business life undisturbed and unembarrassed by claims against its predecessor would suffer a serious defeat.

Summary judgment for Erie will be granted.

The complaint also seeks an accounting against the individuals who served as trustees of Erie and New Jersey during the latter's presence in the Erie reorganization proceedings, charging them with a continuation of the acts by which Erie is alleged to have despoiled New Jersey.

The individual defendants move for summary judgment relying on Section 11, sub. d, of the Bankruptcy Act, Title 11 U.S.C. A. § 29, sub. d, which provides: "Suits shall not be brought against a person who has acted as a receiver or trustee of a bankrupt estate, upon any matter arising in connection with the administration thereof, subsequent to two years after the estate has been closed."

■ This provision seems applicable to a trustee appointed under Section 77 of the Bankruptcy Act. A trustee appointed in Chapter X proceedings is entitled to the protection of this provision by virtue of

Section 102 of that Chapter, Title 11 U.S. C.A. § 502, and it would be senseless to accord a railroad reorganization trustee any less protection. The provisions of Section 77, sub. L, and 77, sub. c (2), provide a sufficient basis for an inference of legislative intention to give Section 11, sub. d, application in a railroad reorganization.

It may be, as was suggested in Schram v. Spencer, D.C., 37 F.Supp. 725, that this statute of limitation does not begin to run in actions based on personal fraud of the trustee until the plaintiff has discovered, or has failed in reasonable diligence to discover, the fraud which is the basis of suit. Cf. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719. Even if this be a case involving such fraud, it is clear from the undisputed facts that the plaintiff here has slept inexcusably on his rights.

The present action was commenced some seven years after the defendants had been discharged as trustees by this Court, and almost two and a half years after the plaintiff instituted his first action involving the same subject matter. The factual situation upon which fraud is sought to be predicated was known to the plaintiff and those he represents long before that action was commenced. Although such questions are not ordinarily happily resolved on a motion for summary judgment, this Court has no hesitancy in finding that the plaintiff is chargeable with notice of the "fraud" on which his present suit is based for a period much longer than the statutory period and his suit against the trustees is therefore barred.

The motion of the individual defendants for summary judgment will be granted.

Erie's motion to dismiss the complaint insofar as it seeks a reformation of presently existing and still executory agreements between Erie and New Jersey will be granted for failure to state a claim upon which relief can be granted with leave to the plaintiff to file an amended complaint within twenty days setting forth the facts upon which this relief is sought.